NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RONALD SIMS,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC, and<br>DAIMLER AG,<br><br>　　　　　　　　Defendants. | Civil Action No.: 16-cv-9051<br><br>OPINION |

**CECCHI, District Judge.**

## I.     INTRODUCTION

This matter comes before the Court on the motion of Defendant Mercedes-Benz USA, LLC ("MBUSA") (ECF No. 4) to dismiss the Complaint (ECF No. 1-2), and the motion of Plaintiff Ronald Sims ("Plaintiff") to amend the Complaint (ECF No. 12). The Court has considered all submissions made supporting and opposing the instant motions, including Plaintiff's reply brief (ECF No. 14) and MBUSA's sur-reply brief (ECF No. 15-1). The motions are decided without oral argument pursuant to Fed. R. Civ. P. 78(b).[1] For the reasons set forth below, MBUSA's motion to dismiss is GRANTED and Plaintiff's motion to amend is GRANTED in part and DENIED in part. The Court has jurisdiction pursuant to 28 U.S.C. § 1332.[2]

## II.     BACKGROUND

MBUSA terminated Plaintiff's employment on August 15, 2014, for what Plaintiff claims

---

[1] The Court considers any new arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991).

[2] For the Amended Complaint, the Court will also have jurisdiction pursuant to 28 U.S.C. § 1331.

1

were discriminatory reasons. The Complaint describes Plaintiff as "an African-American, age 38 (born in June 1978), a native-born U.S. citizen, and an 'out' gay man." (ECF No. 1-2 ¶ 6). MBUSA's parent company is a wholly owned subsidiary of Defendant Daimler AG, a German company, which has yet to appear in this action.

### A. Procedural History

Plaintiff commenced this action on October 26, 2016, in the Superior Court of New Jersey, Essex County Law Division. (ECF No. 1-2). The Complaint brings four claims under the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 et seq. ("NJLAD"), for discriminatory termination based on race, nationality, age, and sexual orientation.

MBUSA removed to this Court on December 7, 2016, invoking diversity jurisdiction. (ECF No. 1). On December 9, 2016, MBUSA moved to dismiss the Complaint, arguing the NJLAD claims were filed outside the two-year statute of limitations. (ECF No. 4). With MBUSA's consent, Plaintiff sought and was granted a series of extensions of time to oppose the motion to dismiss. (ECF Nos. 6-10). On February 7, 2017, through new counsel, Plaintiff submitted a letter conceding his NJLAD claims are time barred, and seeking leave to file the attached Proposed Amended Complaint ("PAC") pursuant to Fed. R. Civ. P. 15. (ECF Nos. 12, 12-1). The Court construes this as a motion to amend. The PAC asserts two claims under 42 U.S.C. § 1981, for discriminatory termination based on race and national origin. MBUSA's reply brief also opposed Plaintiff's request to file the PAC, both as procedurally improper and on futility grounds. (ECF No. 13). Further briefing followed from both parties. (ECF Nos. 14, 15).

### B. Factual Allegations in the PAC

The factual allegations in the PAC are largely similar to those in the Complaint, and are set forth here to the extent they bear on whether amending the Complaint would be futile.

2

MBUSA hired Plaintiff in 2007 as a process-improvement consultant in Montvale, New Jersey. (PAC ¶¶ 6-7). Early in 2011, Plaintiff applied for another position within the company as a customer satisfaction specialist. (Id. ¶¶ 10-11). An outside consultant interviewed and evaluated Plaintiff, and gave him an unconditionally positive review. (Id. ¶¶ 13-14). Plaintiff was offered and accepted the new position, also in Montvale, in August 2011. (Id. ¶¶ 15-16). In 2012, Plaintiff was one of seven MBUSA employees chosen by management to start a new Customer Experience Department. (Id. ¶ 18). Plaintiff always received outstanding performance reviews from his managers, and met or exceeded his performance targets in 2011, 2012, and 2013. (Id. ¶ 20).

In April 2014, Plaintiff applied for another position within MBUSA to manage a training program in Alabama. (PAC ¶ 21). Plaintiff interviewed for the position in June 2014, and his interviewers "communicated how impressed they were" with the interview. (Id. ¶ 24). Plaintiff interviewed again with an outside consultant in July 2014, which "went very well." (Id. ¶ 25).

On the morning of August 15, 2014,[3] Plaintiff ate breakfast with a colleague, Jennifer Harmon, in the company cafeteria. (PAC ¶ 31). The cafeteria had "manned short-order stations" for hot food and unmanned areas for other items, and two cashiers located between these stations and the seating area. (Id. ¶ 28). On August 15, Plaintiff ordered a made-to-order sausage from the grill, served himself oatmeal, and paid the cashier in cash before he picked up his sausage from the grill and exited to the seating area with Harmon. (Id. ¶ 31). It was Plaintiff's usual practice—and that of other employees—to pay the cashier before picking up his made-to-order food. (Id. ¶¶ 29-30). Plaintiff did not ask for a receipt, and the cashier did not offer him one. (Id. ¶ 31). According to the PAC, Plaintiff's receipt probably printed onto receipt tape that fed into a

---

[3] One paragraph in the PAC lists this date as August 15, 2015, but this appears to be a typographical error. (Compare PAC ¶ 31 with PAC ¶¶ 26, 48, 50).

3

wastebasket near the cash register. (Id.). Plaintiff's food cost approximately $2.50. (Id. ¶ 27).

Later that day, one of Plaintiff's managers, Hendrik Hynekamp, called Plaintiff to ask him to report to a conference room in the Human Resources Department ("HR"), where Plaintiff met with Hynekamp and HR executive Jennifer Ahrens. (PAC ¶¶ 26-27). Ahrens told Plaintiff he was being terminated because Plaintiff had taken oatmeal and sausage from the cafeteria that morning without paying. (Id. ¶ 32). Plaintiff said he had paid for the food, but could not produce his receipt upon Ahrens' request. (Id.). Ahrens then told Plaintiff she had witness statements indicating Plaintiff had previously taken cafeteria food without paying, but did not provide these statements to Plaintiff. (Id. ¶ 33). Ahrens suggested to Hynekamp that Plaintiff be suspended pending investigation, rather than terminated. (Id. ¶ 35). Then, Plaintiff asked Hynekamp for more information about the accusation against him, and told him Harmon could corroborate Plaintiff's story. (Id.). Hynekamp did not respond to Plaintiff or Ahrens. (Id.). Plaintiff then spoke privately with Hynekamp and reiterated that he would never steal, but Hynekamp said there was nothing he could do, took Plaintiff's Blackberry and company car key, and sent Plaintiff home. (Id. ¶ 38).

According to Plaintiff, his termination bypassed MBUSA's "progressive discipline process[.]" (PAC ¶ 41). Plaintiff had never been disciplined before, and was unaware of previous accusations against him for taking food from the cafeteria without paying. (Id. ¶¶ 33, 41).

Plaintiff claims MBUSA "favor[s] the employment and promotion of Germans to the prejudice of U.S. citizens and residents, particularly racial minorities." (PAC ¶ 44). According to Plaintiff, "[n]o African-American has ever worked for MBUSA long enough to retire from the company," or been promoted above a certain level, and "only a miniscule number of African-Americans" make more than the two lowest-paid wage bands. (Id. ¶¶ 54-56).

Plaintiff's job was filled by Maximilian Klube, a white, 22-year-old German national of

4

German descent. (PAC ¶¶ 46, 51). Klube was originally hired as an intern in November 2011, but Hynekamp, who is also a white man of German descent, promoted Klube to salaried employee. (Id. ¶ 46). Klube worked as a coordinator—but functionally as an assistant—in Plaintiff's department starting in July 2012. (Id.). Klube "was directly 'mentored' by high-level Caucasian and German MBUSA executives during the entire time Klube worked in [Plaintiff's] Department." (Id. ¶ 47). On August 14, 2014, Klube told Plaintiff he was interested in a promotion and salary increase, and that Hynekamp "had assured him not to worry, because something was coming his way soon[,]" even though HR had previously told Klube he lacked sufficient experience and seniority to receive a salary increase. (Id. ¶¶ 48, 50). Plaintiff's position opening was posted on MBUSA's internal website shortly after Plaintiff was terminated. (Id. ¶ 51). Although several more experienced employees applied and were interviewed, Klube received the position. (Id.).

### III. LEGAL STANDARD

For a complaint to survive dismissal pursuant to Fed. R. Civ. P. 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." Iqbal, 556 U.S. at 678 (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated.... Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" See Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

## IV. DISCUSSION

### A. MBUSA's Motion to Dismiss

MBUSA contends the NJLAD claims in the Complaint are untimely because they were filed over two years after Plaintiff was terminated. Plaintiff agrees these claims should be dismissed as untimely (ECF No. 12 at 1). The Court agrees as well. See Roa v. Roa, 200 N.J. 555, 566 (2010) (NJLAD claims have a two-year statute of limitations running from the date of the complained-of discriminatory act). Therefore, dismissal is warranted.

### B. Plaintiff's Motion to Amend

MBUSA contends the Court should deny Plaintiff's motion to amend both because it is procedurally improper and because amendment would be futile. The Court discusses these arguments in turn.

#### 1. Whether the Motion is Procedurally Proper

Leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), unless "plaintiff's delay in seeking amendment is undue, made in bad faith, prejudicial to the opposing party, or [the amendment] fails to cure the jurisdictional defect[.]" Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000). MBUSA contends Plaintiff's motion to amend should be denied because of undue delay and prejudice to MBUSA. The Court disagrees.

6

Under Rule 15(a)(1)(B), Plaintiff had until December 30, 2016, twenty-one days after MBUSA's motion was filed, to amend as a matter of course. Plaintiff's February 9, 2017 motion was thus filed thirty-nine days after the right to amend expired. Under the circumstances, given that Plaintiff obtained new counsel and redrafted his Complaint to assert timely claims, the Court does not find the delay to be undue.

The Court also finds the delay was not prejudicial to MBUSA. MBUSA argues Plaintiff's motion to amend caused it to waste substantial resources moving to dismiss the admittedly untimely NJLAD claims. (ECF No. 13 at 4). But Rule 15(a)(1)(B) specifically allows an amended complaint to be filed in response to a motion to dismiss, thus recognizing that some motions to dismiss may be "wasted" in the way that Defendant's was here. Defendant's argument is further undercut by the fact that the body of Defendant's initial moving brief was less than eight full pages long. (ECF No. 4-3). Nor is the Court persuaded that Defendant was prejudiced by having to respond to the motion to amend on a shorter briefing schedule than it would have had on a motion to dismiss (ECF No. 13 at 4 n.1), both because Defendant's briefing reflects a thorough examination of the issues and because Defendant never requested an extension of time. Finally, contrary to Defendant's argument (ECF No. 15-1 at 2), Defendant was not prejudiced by Plaintiff filing a reply brief (ECF No. 14) because the Court herein considers Defendant's sur-reply that, at seven pages, does not constitute a substantial waste of resources. To the contrary, as set forth below, in only five relatively short briefs, the parties have enabled the Court to adjudicate fully both the merits of Defendant's motion to dismiss and the viability of Plaintiff's PAC.

## 2. Futility

"To evaluate futility, [the Court] appl[ies] the same standard of legal sufficiency as would be applied to a motion to dismiss under Rule 12(b)(6)." Maiden Creek Assocs., L.P. v. United States Dep't of Transp., 823 F.3d 184, 189 (3d Cir. 2016) (internal quotation omitted).

The Court addresses each of MBUSA's futility arguments in turn.

### a. Termination of At-Will Employment under § 1981

First, MBUSA contends Plaintiff cannot bring a claim for wrongful termination under 42 U.S.C. § 1981 because, as an at-will employee with no contractual right not to be terminated, Plaintiff's termination did not interfere with Plaintiff's contractual rights. (ECF No. 13 at 5-7). Section 1981 states that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). "Make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." Id. § 1981(b).

Although no Third Circuit case directly addresses MBUSA's argument, the great weight of authority within this circuit and in other circuits holds that terminating an at-will employee on the basis of racial discrimination is actionable under § 1981. See Skinner v. Maritz, Inc., 253 F.3d 337, 342 (8th Cir. 2001); Lauture v. Int'l Bus. Mach. Corp., 216 F.3d 258, 259-60 (2d Cir. 2000); Perry v. Woodward, 199 F.3d 1126, 1133-34 (10th Cir. 1999); Spriggs v. Diamond Auto Glass, 165 F.3d 1015, 1018-19 (4th Cir. 1999); Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc., 160 F.3d 1048, 1051-52 (5th Cir. 1998); Aboudekika v. Del. River & Bay Auth., No. 10-cv-5830, 2011 WL 5080216, at *1 (D.N.J. Oct. 25, 2011); McClease v. R.R. Donnelley & Sons Co., 226 F. Supp. 2d 695, 701-02 (E.D. Pa. 2002); Marquess v. City of Philadelphia, No. 98-cv-1117, 1998

WL 355519, at *3 (E.D. Pa. June 29, 1998); Larmore, Jr. v. RCP/JAS, Inc., No. 97-cv-5330, 1998 WL 372647, at *3 (E.D. Pa. May 19, 1998); Hudson v. Radnor Valley Country Club, No. 95-cv-4777, 1996 WL 172054, at *2 (E.D. Pa. Apr. 11, 1996). The Court agrees with the rationale of these cases.[4] Accordingly, the PAC is not futile on these grounds.

b. National Origin Claims under § 1981

Second, MBUSA argues Plaintiff's second claim under § 1981 for national origin discrimination is futile because there is no such claim under § 1981. (ECF No. 13 at 7-9). The Court agrees that the only proper claim under § 1981 is for racial discrimination. See Wesley v. Palace Rehabilitation & Care Ctr., L.L.C., 3 F. Supp. 3d 221, 233 (D.N.J. 2014); see also Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987) ("If respondent on remand can prove that

---

[4] In its opposition brief (ECF No. 13 at 6), to support the proposition that an at-will employee cannot bring a § 1981 claim for discriminatory termination, MBUSA cites district court cases that were explicitly abrogated by their respective circuits, see Lauture, 216 F.3d at 259 & n.1 (abrogating Moorer v. Grumman Aerospace Corp., 964 F. Supp. 665 (E.D.N.Y. 1997) and Moscowitz v. Brown, 850 F. Supp. 1185 (S.D.N.Y. 1994)); Spriggs, 165 F.3d at 1019-20 (abrogating Hawkins v. PepsiCo Inc., 10 F. Supp. 2d 548 (M.D.N.C. 1998)), and cases that do not actually reach the issue, see Gonzalez v. Ingersoll Milling Mach. Co., 133 F.3d 1025, 1035 (7th Cir. 1998) ("[W]e need not determine whether Gonzalez's at-will status provided adequate support for her section 1981 claim[.]"); Curtis v. DiMaio, 46 F. Supp. 2d 206, 212 (E.D.N.Y. 1999) (allowing a hostile work environment claim under § 1981 because it was based on "conditions of [plaintiffs'] employment, and not because they were terminated[.]"). Thus, these cases are not persuasive.

Nor is the Court persuaded by MBUSA's argument in the sur-reply (ECF No. 15-1 at 3-4) that the Third Circuit's decision in Faush v. Tuesday Morning, Inc., 808 F.3d 208 (3d Cir. 2015) controls this case. Faush concerned a temporary employee who did not actually work for the defendant at whose workplace he experienced discrimination; rather, he worked for a staffing agency that placed him and other employees temporarily with a number of businesses. Id. at 210. The plaintiff in Faush received his paychecks from the agency and reported to the agency, not the defendant, if he expected to miss work; moreover, the defendant had no authority to fire the plaintiff. Id. at 210-12. The Third Circuit found on this basis that the plaintiff had no contract with the defendant, and thus could not maintain a § 1981 action. Id. at 220. Nothing in Faush suggests an at-will employee plaintiff cannot maintain a § 1981 action against her full-time employer, and the Third Circuit does not engage with any of the case law from other circuits or within this circuit that allows such an action. As such, the Court finds Faush does not bar this suit.

9

he was subjected to intentional discrimination based on the fact that he was born an Arab, rather than solely on the place or nation of his origin, or his religion, he will have made out a case under § 1981."). However, Plaintiff's allegations regarding MBUSA's preference for "Germans to the prejudice of U.S. citizens and residents, particularly racial minorities" (PAC ¶ 44) and its apparent impact on his career may still be relevant to his racial discrimination claim. See Al-Khazraji, 481 U.S. at 613 ("Congress intended to protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics. Such discrimination is racial discrimination that Congress intended § 1981 to forbid[.]"). Accordingly, the PAC's national origin discrimination claim under § 1981 is futile only to the extent it asserts a claim separate from Plaintiff's racial discrimination claim.

c. Failure to State a Claim for Discriminatory Termination

Finally, MBUSA argues Plaintiff's § 1981 claim is futile because he has not alleged facts that give rise to an inference of discriminatory intent. (ECF No. 13 at 10-12). The Court disagrees.

"[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII." Brown v. J. Kaz, Inc., 581 F.3d 173, 181-82 (3d Cir. 2009). To make out a prima facie case of discrimination, Plaintiff must show: "(1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008). "[A] claim of employment discrimination necessarily survives a motion to dismiss so long as the requisite prima facie elements have been established." Castleberry v. STI Grp., _ F.3d _, No. 16-3131, 2017 WL 2990160, at *4 (3d Cir. July 14, 2017).

The fact that Plaintiff, an African-American man, was replaced by Klube, a white,

ethnically German man who was allegedly less qualified than Plaintiff is sufficient to give rise to an inference of intentional discrimination at this early stage of the litigation. See, e.g., Kargbo v. Philadelphia Corp. for Aging, 16 F. Supp. 3d 512, 526 (E.D. Pa. 2014) (element satisfied where black male plaintiff was replaced by a white woman); Hicks v. Arthur, 843 F. Supp. 949, 956 (E.D. Pa. 1994) (element satisfied where black female plaintiff was replaced by a less qualified white male). This conclusion is reinforced by Plaintiff's allegation that Hynekamp, who fired him, had suggested to Klube just days earlier that he would be promoted soon despite his lack of qualifications, as well as Plaintiff's claims about the disparate employment prospects of African Americans at MBUSA and the alleged circumstances of Plaintiff's termination without an investigation. Therefore, MBUSA is incorrect that the PAC does not allege facts giving rise to an inference of discriminatory intent.

Accordingly, the PAC's racial discrimination claim under § 1981 is not futile.

## V. CONCLUSION

For the reasons discussed above, MBUSA's motion to dismiss (ECF No. 4) is GRANTED, and Plaintiff's motion to amend (ECF No. 12) is GRANTED as to the claim alleging racial discrimination but DENIED as to the claim alleging national origin discrimination.

Plaintiff will be granted fourteen (14) days from the date of this Opinion to file an Amended Complaint omitting the national origin discrimination claim in the PAC. If appropriate, Plaintiff may include factual allegations underlying the purported national origin discrimination claim in support of his racial discrimination claim, in accordance with this Opinion.

An appropriate Order accompanies this Opinion.

*s/Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

Dated: August 24, 2017